21-2205 Mr. Wright, whenever you're ready. May it please the Court, I'm Patrick Wright. I represent the appellant Jody Lutter. I'd like to reserve four minutes in rebuttal. This Court has asked the parties to focus on the question of whether payment of past union dues is moot. When one of the defendants here, Jneso, tendered a check seeking the return of the dues at issue in this litigation, a compensatory damages claim for about 11 months worth of dues. The answer is no. First, using essentially contract theory from like in the Supreme Court's Kimball-Ewald decision and further developed in the Seventh Circuit's Fulton-Dentel and Conrad decisions, an unaccepted offer cannot moot a case. As the Seventh Circuit said in Conrad, everyone should have his day in court and that day not be used in a way that is necessarily economically rational. Well, that would make sense where you've got a settlement offer that doesn't provide complete relief and needs to be accepted. In the contract paradigm, but what is there in Kimball-Ewald or Blaspina or any of our case law that suggests that they were undermining the foundational principle that if a court can no longer provide any additional relief to a plaintiff, the case is moot. Right. And that is part of the question. There's at least four possible outcomes. One, the contract theory that I was just going through. Second, that there has to be a judgment, that that judgment must be an admission of liability and that leads to fees and costs. That's our alternative position. That's our second choice. Why would there need to be, if there's a judgment, an admission of liability? Why couldn't that be? To the extent that the requirement of the judgment has been suggested by Justice Kagan or the Chief Justice or Justice Kavanaugh, why couldn't that be in the form of simply a default judgment where a defendant opts not to defend? Well, if they did a default right off the bat, then that's one thing. But both in Kimball-Ewald, there was a discussion of whether or not the defendant should or should not be given control over the process. And the Chief Justice Roberts' dissent was saying, look, you're giving the control all to the plaintiff. And then in response, the majority wrote, but you'd be trying to give it all to the defendant. And that there is a little bit of gamesmanship that's going on. There's gamesmanship either way. If we draw the line and say, you've got to go all the way to the judgment, well, plaintiff's got to go all the way to the judgment. And then we can just keep cases alive because they feel like they want an abstract declaratory judgment. And that's at odds with the rules against advisory opinions. If we draw the line too far the other way, then defendants can play these games to avoid attorney's fees. So I'm not sure we can make a good functionalist ruling. Whichever way we rule, someone's going to be able to play games with something. Sure. It's not just to avoid attorney's fees. But in this case, it's also to avoid an important principle. And that's the Seventh Circuit argument that we were initially discussing. The amount in controversy here is fairly small. Constitutional claims often are. Absent a prison guard taking a baton to somebody's head, your compensatory damages claims are going to be relatively small. When you're talking damages as opposed to future injunctive relief. And so if you end up in a situation where these are easily dischargeable, you walk into court, you throw down a dollar, and you say, okay, good luck with your litigation, then it's going to be very difficult for you to get out of jail. It's going to be very hard to litigate claims. This is why we're aiming at the Seventh Circuit as, go ahead. Even Uzug Bunum seems to suggest that throwing down a dollar suffices. Actually, two justices in Uzug Bunum suggest that. And that's Justice Kavanaugh and Justice Roberts in dissent indicate that. And when the case went back down to Georgia, they actually had this whole battle play out. There was a Rule 67 offer. That was the district court denied it. Then they tried it with just handing them a dollar check. And then the case settled at that point. Let's take a look. Campbell-Ewald. 414. The deciding vote is Justice Thomas. Justice Thomas's position is, let's look at the common law tenders. The unaccepted offer is one. You don't have an admission of liability. But if someone tenders to you and says, I'm making payment of the entire amount you're demanding, I'm not doing this under protest or reserving rights or anything, like, yeah, I'm liable to you with this $57.40 or whatever it is. He looks at the common law and says, looks to me like you got all you were entitled to. You got the money. You got the admission that this money was owed. That's it. Why shouldn't, if we're going to, we want a rule, it seems in this area where you're going to have consequences either way, the most important thing is to have a clear rule. Why isn't a clear rule to follow the common law on tenders? There is, yes, that is Justice Thomas was talking about the common law of tenders. But there was an admission of liability. Here we don't have that. I mean, in this case, we do not have an admission of liability. All we have is, here's some money, go away. Wouldn't the case be different if they accompanied the check with a, yes, we owe you this amount of money? And this goes to the third possible outcome, which is that there be an admission of liability that doesn't, a judgment that doesn't have liability, because Justice Thomas sort of left that question open. What's your answer? Is your answer, no, we don't think that would suffice, but as a fallback, it would? The answer is our second, we want the contract theory. If we do not get the contract theory, I want the admission of liability, which with it, under common law tender, requires that the defendant would pay things like attorney's fees and costs to go with it. I'm not sure it does require attorney's fees. Well, according to Justice Thomas, it did. That was his theory. Now, there was an argument. He was vacillated a little bit as to whether or not an admission of liability was required. But you'll note in Campbell-Ewald that they do note that the offer did not have an admission of liability. But if there's an admission of liability, I think the rule might be different under mandatory fee shifting statutes. I'm not sure you get fees under discretionary fee shifting statute if you just admit liability. And you're on a discretionary statute here. Yeah, I didn't research 1988 to that level to determine whether or not a default versus an admission of liability would be key for us to get attorney's fees. So your primary theory is the plaintiff has mastered the complaint, can just reject things. Absolutely, that is our primary. Can basically say I never want this case to be moved because I want to be Inspector Gervais and hunt this person to the ends of the earth. But if we refuse to keep cases alive that long, you'd like a default judgment with some kind of finding of liability or else an admission of liability. A default judgment, I'm not entirely sure, is the right term. I would like a judgment with an admission of liability that they did some constitutional wrong. Can you get fees even if you have a judgment without an admission of liability or is it your position that you're precluded from that? Your Honor, I just admitted I didn't look up the answer to that and don't have that clear as under 1988. But let me just tease out kind of your pecking order. I mean, then two and three would be in the same boat, right? Well, two is better than three from us because we're trying to establish the principle and we're trying to get the... You want a precedent. I don't see any way in which you can hold out for a precedent. Because that feels advisory, right? Yeah. There is a portion of Uswe Bunim where the court discusses... This is in the context of nominal damages, I'll admit this. But they say that we don't want to end up in a situation where a low-level damages claim is different than an important principle dealing with nominal damage. Now, I'm paraphrasing that. I can get you an exact citation and quote if you want it. But the point is, and this goes to what the Seventh Circuit was saying in Conrad, is that these important principles matter more to the litigants. Ms. Lutter wants... She wants to win the case more. This is a vehicle for an important principle. Wait a minute. She has a personal stake in being vindicated against her grievance against this union. Correct. We can talk about whether that involves a judgment or admission of liability. Correct. But you're going further and saying she wants to help other people. And I don't see how that can be her personal case in controversy. Because once she brings the lawsuit and they decide to defend it, then this is the question of, okay, how do you turn off a case or controversy? Is it opening an envelope that has a check in it and all of a sudden it's gone? If the defendants are correct under their theory, which is no judgment, we just hand the money and we walk, okay? There is never a judgment to be entered. The court loses power the second the case is moved. So you cannot enter a judgment after cash has been handed to you. If they're saying that, hey, we got the check in your hands and this is sufficient, then there would never be a judgment that could be entered. Now, that goes contrary to what the majority was indicating was the reserved question in Campbell Ewald. But when we take the position of the Second Circuit in Geisman, it's once the judgment is entered that it then becomes moot. And so you have a bright line. That is the point in time where you clearly have mootness. That is our alternative position, is that in one of the either the second or the third of whether or not it is or isn't an admission of liability that goes with it. If it goes judgment, then money, then potentially, I have to still check on the 1988 whether or not we do or do not get fees and costs, that that is a better situation than here's your money, we're done. But a default judgment would satisfy your second prompt. I looked over all the default judgment things last night. Let me think about it. Is there any way in which you have a right to continue litigating after a default judgment? No, but I don't know if they can just up and quit in the middle of it. If they came in, the question we had last night was let's assume that the moment we file this suit, they don't bother sending a single thing. Okay. So what would occur? We would get, assuming under Rule 54, we would get the damages assuming that they were easily provable. If not, we'd have to come in and have a hearing. This is at the trial court, of course. And then after that, with the default judgment, I don't know whether we do or don't get fees, but we clearly do not get in that situation a discussion of the merits. Well, at one level, the default judgment process proceeds, as I understand it, in two steps. First, when someone does not respond to a complaint, then they're in default, meaning that all of the allegations are admitted. Then with the basis of all of those that are admitted, a court has to undertake to say, now I've got no disputed facts. I see what's admitted. What's the amount that I have to give that I have to award? Correct. And so in the default judgment category, I mean, I guess you could say there's first been the default in the admission of all the allegations in the complaint. That's only for purposes of a case, though. That's not precedental or anything else like that. And it doesn't do us any issue. I'm sorry, Your Honor, I didn't mean to interrupt. It doesn't do us any issue preclusion. And so if they had chosen that, I don't think that we can come in to this court and say that, oh, we really, really, really wanted this. You have to take your default off and make some decisions. But I guess what I want to get at, though, is, you know, a mootness motion, you know, there's not really, you know, maybe it comes in the context of summary judgment. You know, you say, hey, I'd like you to dismiss the case as moot at summary judgment or something like this. But there's not a rule of civil procedure for mootness typically. You fit it into one of the preexisting rules the best you can. But I guess I'm thinking to myself, what would prevent a party from saying to the court, we'd like to confess judgment. We've got money. We're willing to pay it. And we just want a judgment against us for this amount. And we don't care about mootness. We don't care about anything else like this. We just want the judgment against us. Well, you think that that's an option on the table? And if so, that would end the case, right? If a party moved and said, we aren't giving them a check. We're moving to the court. We're ready, willing, and able to pay it. We'll even deposit something in the clerk's office. Now, can you just enter judgment against us without a finding of liability, without a finding of liability? And if a district court did that, you wouldn't say that was granted that motion. You wouldn't say, wow, that was error. You would just say fine, right? There is a, we would still prefer to have an admission of liability. You would prefer it, but you couldn't say that the district court erred by granting such a motion. It depends if I can get Justice Thomas's Uzu-Ebunim, excuse me, his Kimball-Ewald decision to become a majority opinion. Right now, it's a one-person opinion. There is some indication from Uzu-Ebunim that his analysis of looking at the common law of tender is going to carry the date because... But you're trying to take parts of that analysis and not other parts, right? Sure. First of all, you've given us no authority that says you're entitled to hold out for a precedent. Aside the Seventh Circuit, the Conrad decision. And Justice Thomas's suggested that you don't even get to hold out for a judgment. I don't believe that's accurate. I believe what he said is you don't get to hold out for a... He vacillated on whether you could or could not hold out for a judgment that requires an admission of liability. No, no. It wasn't a judgment. It was a tender that was coupled with an admission of liability. He said sufficed. Well, it's a constitutional equivalent because we're looking at a common law of tenders to help us decide what is a case for controversy. So, yes, in that extent, I agree with you. Okay. So, is this case about attorney's fees? Would Ms. Lutter be entitled to attorney's fees if she won on the merits or if... Attorney's fees is... If she accepted an entry to judgment? It's a byproduct at best. And this is not... If there was no attorney's fees statute, the same question would still arise. Okay. But would she get attorney's fees if she won on the merits? This is a discretionary call, right? If she won on the merits, yes, she would be able to argue under FARR and I forget what the law... BAPA canon or whatever it is. But you said you weren't sure what would happen if she necessarily accepted an entry of judgment here. Correct. Okay. Does she still have the check? I believe we still have the check. I have no idea if it's valid after whatever it is. You have it. It hasn't been torn up, hasn't been mailed back, hasn't been cashed. Correct. Got it. Do you dispute that the check would have fully refunded Lutter's dues? Nope. And this is not a dispute about this being a personal check versus a bank check or a cashier's check. You have the same problem with a bank or a cashier's check or a money order. Whatever the amount of money would have been sufficient if that is the only thing that is required to moot the case. Is that a concern just as a matter of principle in terms of the judgment, you know, a judgment as opposed to a mere tender? That is that it's also a mechanism to ensure a plaintiff's entitlement to retain the funds. I'm sorry, Your Honor. I'm not sure I understood the question. As we were talking about whether you're next to last choice of having a judgment, you know, one of the reasons for that is on principle and the principle that you'd like to defend. One is on the attorney's fees. I'm asking if there is another in terms of and perhaps not a concern of your client in particular, but in thinking about what the applicable rules should be, whether a judgment has the additional effect in terms of clarity of pronouncing a plaintiff's entitlement to retain whatever the funds are, their ownership and entitlement to the funds or property that are disputed. Yeah, the letter in this case said that here's this related to damages. We're not asking for anything in return. So I don't know that we needed much more than that if we thought that that was sufficient to satisfy that claim. So I don't know how often your hypothetical is going to come up. I'm not entirely sure it's at issue in this particular case. You seem to be suggesting that a defendant can't unilaterally move the case. A damages case would be a lot harder. Yes. What about voluntary cessation situation? Right. That is a forward looking relief, and that's a little bit different in there. And obviously we had the voluntary cessation cases. We're not claiming it. It's hard to show. Right. There's a strong burden. But it can happen. Yes. And we have here obviously not one but two statutes that may or may not have been, it's our belief that they were created by the legislature in order to blunt the impact of the Janus decision. So if we were looking at this as a forward injunction case, and the claim, the damages claim, we don't have, the compensatory damages claim, we don't have any forward injunctive relief tied to it. We would if the waiver claim, which we're admitting has fared extremely poorly all throughout the federal court system. We've preserved it. But that's not what you all asked us to talk about. Yes, the damages claim. But now putting on a what would happen with a voluntary cessation. It can be done, but you do look a little bit at the defendant's intent there. Why are they doing this? How likely are they to misbehave again in the future? There's a little bit of, okay, can we trust you to really stop? That goes into the voluntary cessation. Here you have not one but two statutes that are directly in attack on the Janus decision. The legislature is more in line with the labor movement perhaps than people like my client and created this thing that made it a little bit harder for people to get in and out of the union so that they could potentially keep these going. At least that's our view of what the statute was created for. If a voluntary cessation was established, you wouldn't argue in that circumstance that attorney's fees would salvage it from mootness, right? No. The law is clear that the fees themselves cannot be a basis for Article III jurisdiction. It is a byproduct of an otherwise valid relief claim. In this case, we're saying that's the compensatory damages. If we have that and if you cannot distinguish it, either you just can't distinguish it via contract or you can't distinguish it without doing a judgment, then there are things that are attached to that, including finishing off the costs and fees. And again, I didn't say again. In our briefing, we indicate that there's a parent union here that's involved. AFL-CIO agrees with us on this. I mean, this is a point that they made in their Campbell-Ewald-Demekas brief, and we're discussing this very concept of tender. So they're kind of at that third spot, at least they were. Obviously, they have the right to change their opinion between 2016 and 2022 and as different facts and circumstances go. But at least at one time, they were at that third spot. And weren't at the money alone, does it? Okay. We'll hear from you in a minute. Thank you. Thank you. Thank you. Good morning. I may have pleased the court. Deputy Solicitor General Angela Cai for the State Appellees. And my colleague, Mr. Tesowitz, will speak for Jay Nesso. This is a case about a plaintiff who asks a federal court to order her a refund, but she has already received that refund in full. By directly giving appellant the total amount of damages she requested, plus interest with no strings attached, Jay Nesso made her whole. Since there is no dispute that appellant actually received everything she asked for, she no longer has any personal stake in suing the defendants, and the courts cannot grant her any further relief. Why is that true where what's been provided is simply a check? And I understand from your colleague that they're not contesting that it would be fully funded. But as a general matter, isn't there a distinction to be drawn between a cashier's check or cash and a check that may or may not go through? Certainly not as a matter of New Jersey law. Appellant has no answer to our citation of New Jersey law and Jay Nesso's citation of case law and statutory law on the fact that a check, even a personal check, unless there's some dispute about whether or not the payer is good for it, which is not present here, is the equivalent of cash under New Jersey law. Does the check expire? There is nothing in the record suggesting that the check has expired, nor have they suggested that. But could it expire? In a theoretical world, I suppose it's possible. But here's the key distinction. The fact that the check may at some point in the future expire doesn't mean that the case is not moot because the appellant has had the check in her hands. So let me just tease this out. Let's say you gave a check that expired in 12 hours, full and complete relief. Is that mooted? I'm not aware of any check that has that. But, yeah, it's a hypo. Yes, because under New Jersey law, the check is the equivalent of cash. So if Jay Nesso had delivered her a bag of cash and she lost it later, that doesn't mean that her claims were not mooted by the fact that she received the cash. So a check with a 12-hour expiration would be, would moot the case? Yes. What about 12-minute expiration? Would that moot the case, too? Yes. Let me put it this way. Every two weeks I get a check from my employer at the State of New Jersey. Sometimes it's a direct deposit. Other times, if that doesn't work for some reason, I get a check. I would never say that the difference of whether I have been paid is based on whether it's a check or if it's a direct deposit. In each case, I would also not say I have been offered my salary by my employer. I would say I have actually received payment. And that's the distinction between this case and Campbell-Ewald and all the other cases that they cite. Let me ask you, because Appellant argues with some force doesn't have a judgment. There's no costs here. There's no preclusive effect. How do we know? Maybe someone wants to go to an insurer to talk about whether, in fact, this dispute is over. Why shouldn't someone be entitled to hold out for at least a default judgment? A few reasons, Your Honor. The first is that a judgment doesn't do anything to redress an actual controversy between the parties. Just as in a case where there's voluntary cessation, such as the Supreme Court case already versus Nike, a judgment for the plaintiff doesn't actually resolve any case or controversy. And that's why, in voluntary cessation cases, we don't require that the court enter judgment for the plaintiff. But more sort of jurisdictionally or on a principled level, if the court has no case or controversy before it, and I think Appellant's counsel already admitted to this, there is no jurisdiction to enter a default judgment. And I think that's the jurisdictional reason why that would not be required. But finally, as a practical matter, you might imagine that in a settlement offer or a settlement agreement case, a judgment would be helpful to the plaintiff who wants to collect on the settlement if the money is not actually in her hands. She needs to be able to go to the defendant if the defendant never calls her back again, never shows up with the money to say, I have a default judgment against you. I need you to pay up. That's not this case because she already has the check in her hands. So this sounds like a really just basic principle. You're asking for just a really basic principle of law. Providing a check moots a case. That's one sentence, black-letter law, that you'd like to establish. From what I can tell, federal courts have been around since the first Judiciary Act, 1709. Has any of them at any point in time ever said that basic principle, that providing a check moots a case? I don't know about the form of the actual way in which the defendant puts the money in the plaintiff's hands has been so specifically set as to be a check or not a check. But I think the Supreme Court has held in cases like San Pablo and San Mateo, that actual payment, be it direct deposit, cashier's check, bag of cash, in this case personal check, does, if it fully redresses what the plaintiff is seeking in her complaint, then yes, that moots the claim. And this Court has said the same in Cochetti v. Desmond. And that's what happened here. The appellant has been refunded in full, so the core elements of Article III, as Your Honor says it's a very simple case, are now missing. First, there's no longer an injury that the Court can redress, since there's nothing the Court can do to order retrospective compensation that she hasn't already received. Second, there's no adversity between the parties, because she no longer has even an iota of a concrete cognizable interest, and a mere desire to have her cosmic vindication is not in Article III. But why not take the position that that is true, that there's nothing further upon the entry of judgment? Because unlike a situation where there's forward-looking relief at issue, the default would not be, you know, if there's a judgment to be entered, it's not the effect of a court ordering some injunctive relief to take place, which could only be on the basis of some various determination, but it is, in effect, closure on the entitlement to the funds or property that are at issue. Because the Court lacks jurisdiction to give the plaintiff that closure or satisfaction from an advisory opinion. Well, you could take the position of the Second Circuit that it's not until that judgment is entered that it then becomes moot. I think the Second Circuit was very much opining on that issue in the context of a Rule 67 deposit in the registry of the clerk. And I think that operates very differently from what we have here, because in that context, without the judgment from the court, no one gets paid. The way that Rule 67 works is actually not for this kind of situation, but oftentimes to determine who is entitled to a certain amount of funds. And so in interpleader actions to determine, you know, which of these individuals actually gets the money, without the court entering judgment, nobody is entitled to the money. But it could also work as a mechanism. If you have a recalcitrant plaintiff who would like to just move forward and litigate on principle, even if their own relief has been fully provided, that provides a mechanism for a defendant to place the complete relief within the auspices of the court and to proceed, you know, via Rule 67, but with a judgment by the court that then renders it moot. Yes, but that's only if the way in which the defendant wants to satisfy plaintiff's demand is via this very specific mechanism, which is a fairly convoluted mechanism because it does not by itself, the deposit of the funds doesn't determine ownership. And so what is required in that case is for the court to enter a judgment as to who now has the money. That's not a question in this case. The appellant has the money. Jay Nesso no longer has the money. It's not a – Let me ask you a slightly different hypothetical. Let's say you wrote a check and said, it's at my office. I left it with the receptionist. That doesn't moot the case, does it? Just drive up to my office. I have to go see my receptionist. I left the check there for you. Can you go to court and say the case is moot because there's a check ready and waiting for you at my receptionist's desk? I think I would have to check with state law, but I think unless the person who the check is addressed to actually has the check, they have not yet been paid. So in the words of Campbell Ewald, the person is still empty-handed. The receptionist may not let them in. They may not be there. There may be barriers or obstacles for that mechanism to work. That's not present here. And if I may, Your Honor, I think there's another reason that appellant has never addressed why the Campbell Ewald decision cannot be extended to this circumstance, and that's because the reasoning can only be applicable to class actions. The court had explained that class claims have to be treated differently because of the unique concern that defendants can avoid exposure to class damages by offering a small settlement to the lead plaintiff pursuant to Rule 68. That's not present here. And separately, it noted the fact that the plaintiff has concrete interests in being a lead plaintiff, specifically the class damages as well as whatever incentive payments that would go to a class representative that the court could not redress in that context, and that's not present here either. But in addition, it goes on to talk about whether an individual plaintiff's claims are moved. Correct. Right, and that's separate and apart from their status as a class representative. I think it's both, Your Honor. I think Campbell Ewald admittedly didn't explicitly come out and say which of these is important for the holding, and I think both of them are, and that's why no court of appeal has extended its reasoning to a case where neither is present, which is this case. So if you don't have an individual plaintiff who is trying to represent class interests and stands to gain monetarily from a successful class action, and you don't have a plaintiff who only has an offer of contract but no acceptance or actual money in hand, then you can imagine the outcome being very different. But here, neither is true, and so for those reasons, the district court should be affirmed. So can I just ask one follow-up question? If your goal is just to end the litigation, right, why not just file a motion? Because sooner or later, you have to make a motion to the district court. You have to make a motion to the district court for a mootness determination. I mean, the litigation doesn't end. Some motion is coming. So you can make a motion for mootness, but if you just really want to end it, why don't you just move to the district court and say I have a motion to confess judgment. We're willing to pay. We're willing to take a judgment. And, you know, I think very few district courts would say you're willing to pay the full amount. As soon as they heard that, I think they would say granted. And so I guess my question is that avenue seems just so ready and so available because you're going to move the court one way or the other. You're going to move it with a mootness motion that involves all these deep questions, or you could just move it with a motion for consent judgment. So we consent. This is what we're willing to pay. Please enter a judgment against us without finding a liability. So the presence of that other option, it strikes me that we've got two choices. We can either let courts end things how they might normally end them, or we can extend Article III in a way that no court, as far as I can tell, in Anglo-American jurisprudence has ever done before. And so I guess my question is why didn't you make, if you just want to end the case, and if this is privilege, I'm going to say it obviously, but why didn't you just make the motion to confess judgment? So let me answer the first, pick up on one thing that Your Honor just mentioned and then answer the question more fully. So I'm sorry if I misspoke earlier, but there are many cases in this court and other courts which have held that in similar situations where a check is given to the plaintiff and it's not a class action, that moots the case. So this court, in a non-presidential decision in Adams just earlier this year, in one line held that mooted the case. The same goes for the Sands decision from the D.C. Circuit, which I believe Jay Nesso said in the brief, and cases from both of our briefs from the District of Minnesota, Connecticut, Eastern District of Virginia, Southern District of California, Middle District of Pennsylvania, all hold the same. So certainly many, many courts, even after Campbell-Ewald, have already held exactly what we are proposing here. But more specifically to your question about whether there are other ways to end the case, yes, there are many ways to end cases. And one option, as Your Honor had mentioned, is if a defendant wants to move the court for an entry of judgment against it, sometimes people do that in order to get to an appeal faster, any number of reasons could happen, that would be a judgment on the merits without a presidential decision, and that's an option that defendants can have. That's not the question that we have been – Sorry, how is that a judgment on the merits? Oh, sorry, a judgment for the plaintiff, I'm sorry. Not a judgment on the merits of the claim, but rather a judgment for the plaintiff. I'm sorry, I misspoke there. Is the elephant in the room here attorneys' fees? I'm sorry? Is the elephant in the room here attorneys' fees? I think it's actually pretty much agreed between the parties that a claim for attorneys' fees does not keep a case alive. It doesn't keep a case alive, but it does under Section 1988 to the extent that the case law says that a default judgment involves action of the court and therefore is accompanied by attorneys' fees. Is that the real driver here, that that's the difference between doing this by way of a default judgment and not? I don't know if that actually makes sense from an Article III perspective. While it may be the case that an entry of a default judgment, our position is if the case is already moot, the court does not have jurisdiction to enter a default judgment. And that's different from the Geisman case where the case was not already moot because the entry of the funds into the court registry does not actually moot the case. So there is no question under that principle that if there is mootness, then a claim for attorneys' fees in a hypothetical world in which you may get a default judgment does not actually unmoot the case. That begs the question. If it's the entry of the judgment that takes care of the closure to the case, ensuring that the funds are now those of the plaintiff,  is that the real driver to your position here? It's certainly not the driver of our position. And I would submit to the court that no matter what makes a case moot, be it payment directly to the plaintiff, be it voluntary cessation, be it some intervening events not in the defendant's control, the fact that the plaintiff also requests attorneys' fees doesn't then reopen the case. The case was always mooted by whatever other event previously took place. If the case were to proceed without mootness for some other reason and then there is court-ordered change of the relationship between the parties, then, yes, there may be a question of attorneys' fees. But that has not happened here. Doesn't there need to be court-ordered change? I mean, that is, if a dispute between the parties is resolved before a plaintiff ever goes into court, then it's moot. They have nothing to come in and vindicate. But if a defendant is held out such that a plaintiff needs to proceed and seek within the auspices of the court to pursue their rights, doesn't that require some intervention by the court to resolve the relationship between the parties? Isn't it fundamentally different once a case has commenced? No, Your Honor, it is not. And the reason is, if you look at cases like either Already v. Snaky or Alvarez v. Smith, so in Alvarez, there's actually a very parallel example. In that case, the plaintiffs were challenging the seizure of their personal property, cars and cash, by I think it's the Illinois police. And after the case was filed, but while the case was pending, the cars were returned to the plaintiff. That mooted the case, the Supreme Court held. So the fact that it's cash or a check versus a car really makes no difference in terms of Article III. The plaintiff has received all the redress she asked for, whether it's a car or the cash that she says should be refunded to her. And what is not required to end the case is a determination of attorney's fees, an entry of default judgment, or an admission of liability, which is absolutely not the holding of the Supreme Court or this court, or even what Justice Thomas was discussing in his concurrence in Campbell-Ewald. I think it's important to note that the discussion of admission of liability was in the context of stilt tenders of settlement offers. And at the end of that discussion in Section 1 of his concurrence, he discusses the fact that it's the fact of an offer that's important. And then later he discusses the fact that what is dispositive is the fact that the plaintiff had not actually received anything. He also notes that not every rule that attached to common law tenders would have to be satisfied. And so even in his concurrence, even if you take it as a majority opinion, which of course it is not, I don't think that results in the fact that you would need an admission of liability. And I think that would upturn just about every decision of this court on mootness, as well as that of the United States Supreme Court. In your paradigm, what prevents a defendant who anticipates that they would be held liable from holding out, forcing a plaintiff over years to accrue attorney's fees, and the day before trial providing the amount without a judgment being entered that would bring with it, not to save it from mootness, but simply as a matter of the fair administration of justice within the court, attorney's fees? Two things, Your Honor. First, the defendant would also be accruing attorney's fees and continuing to litigate the case. And I think that deterrent is enough for a lot of defendants not to want to pay for their attorneys to do all the motions and discovery and all that. I think that's not really in any defendant's interest. And second, I think it's very hard for courts to ascertain in that situation what is the motivator behind a defendant's decision to fully pay the plaintiff. It could be that after a certain point, after seeing how the case is shaking out, they no longer want to continue with the litigation. I think it would be difficult for courts to determine that it's actually out of malice or some other motivation. If that were true, however, I think there could be a determination as to whether or not there's misconduct on behalf of the attorneys or on behalf of the party. But I don't think that's really what's happening because most defendants don't want to be accruing their own attorney's fees and continuing to litigate a case for years and years because that is also very costly for them. So the motivation I just don't think exists in the vast majority of cases, or I can't think of a case in which it would exist. Thank you. Thank you. May it please the Court. My name is Seth Tasowitz. I'm with McCraw-Hyneman, and I'm on behalf of Genesso District Council No. 1. Initially, I join in everything that my colleague, Ms. Kei, said on behalf of the state and would ask the Court to adopt what she has stated. The problem with this case is that there's a conflation of various parties. The state, the county, and PERC are government entities. Genesso is a private union. As such, I know the issue arose before addressing about council fees and whether council fees would apply in 1983 and 1988. Genesso is a private actor. It is not a state entity. Therefore, arguably, the council fees would not apply here. And indeed, if you look at the complaint and the attachments to the complaint, which are in the record on appeal, the decisions to continue deducting dues checkoff was not done by Genesso. That was done by the state actor. And the request to withhold dues checkoff was done by the state, by the county, I should say. That was where the request was made twice. And if you look at it, there's an email chain back to Ms. Lutter from the county, not copy to Genesso, saying we can't do that because of the WDEA. Therefore, there would be no opposition. The opposition would be Genesso is not a state actor and that there would be no direct council fee award under 1988. Again, if you look at the complaint, in the addamant clause, there's only two requests for relief against Genesso. Number one, that it cease taking dues checkoff from Ms. Lutter since she resigned. And secondly, that they refund her the full amount of the dues they took after she first attempted to resign in 2018, I should say. Genesso did that. Genesso clearly has no ability to continue to take dues checkoff in the future because there's no dues checkoff card signed by Ms. Lutter. The only way that could happen is if Ms. Lutter said, oh, I want to join the union again, sign the dues checkoff card, then they could do it. Absent that, there's no way Genesso could do that. And therefore, the voluntary cessation doctrine would apply in this case. So, in fact, by giving the check and not taking more dues checkoff since she resigned, Genesso has complied with every requirement in the complaint sought against, the relief sought against. There's nothing more that can be sought from Genesso in this case. I think we understand your position. Do the colleagues have any questions? If there's no further questions, I do. Thank you. Thank you. Thank you. Thank you, Your Honors. I'll have a couple, three or four points. I'll try and make them very quickly. Campbell eWall is not only for class actions. If you read the majority or the plurality indicates the question presented, talks about individuals. There's another portion of the case where they talk about analyzing an individual claim that's on Jump Sites 165 for it. So it's not just a class action claim. Contrary to what the Attorney General has indicated, this doesn't turn on state law. It's constitutional. Now, state law might have some impact as if it turns out that just giving somebody money is sufficient. It's not because New Jersey law says it is. It's because the constitutional analysis of what is a case or controversy solves that. So that is somewhat of a question from Campbell eWall, from Justice Thomas, and so forth. Obviously, you know our position on which way that should turn out. I do want to address the elephant in the room question a little bit. I think this, when you look at it in Uswe Bunim, you kind of get to these questions. And that is, is there gamesmanship going on? How are we going to handle constitutional litigation? Does the attorney's fees stuff matter? And this is the questions that are the three people that could potentially be in charge of when we do end these suits are the plaintiff. That's our contract rule. Chief Justice Roberts has made it very clear that it's the defendants. And there's also some question of, okay, is it for the courts and how do the courts do it? And that's some of this middle ground that we're talking about with Justice Thomas. But again, you have most of the time when you're dealing with constitutional claims, because the government actor is involved, you have the government. Now, the government may claim that it can run out of money, but it really can't. I used to be an assistant attorney general. I would go before a judge and he'd go, well, Mr. Wright, why don't you give up on this case? I'd go, well, Your Honor, well, just give me a new one. I'll have something tomorrow. I mean, I don't run out of cases. We don't ever run out of money. And so the incentive structures are different for a plaintiff to challenge this. This is somebody who's got to go and find an attorney who's either willing to do it for free or has got to pay that attorney. And in almost every case, you're dealing with a government entity on a constitutional claim. Now, they can sit there for years. They have sat there for years. We still haven't gotten the AG to engage on what I think are the merits of our underlying claim. And so this elephant in the room, this cost, this gamesmanship, is behind some of this concern over how easy or how hard are we going to make constitutional litigation. The union is correct that it is a private entity. State action doctrine indicates that it gets brought in. There have been all kinds of cases where unions have had to pay attorney's fees before. Can I just ask one question on fees? Sure. Let's say the claim is not this case, but let's just say the claim is only for injunctive relief and there's voluntary cessation. And let's say it's great voluntary cessation. No exceptions, no doubt, really adamant voluntary cessation such that it would move the case. Yes. And let's say it took three years of litigating to get to that point. Do you think that there is no fee claim under 1988 in that instance? That's straight New York state pistol and rifle. That is exactly that case. And Justice Alito went into it in depth as to why it frustrated him so. But there's no attorney's fees because they essentially changed the policy in the state law after certiorari was granted years into litigation. So yes, that would happen. Yes, it has happened, and recently. 1988 is discretionary. How about some of the mandatory fee-shifting statutes? We had a mandatory fee-shifting statute where, I mean, is someone prevented from being a prevailing party unless and until there's a judgment? Under 1988, that is my understanding, under the Buchanan and Farrar cases, those are two cases which you have to have gotten a judgment. You have to have gotten a consent decree or a judgment in order to get fees. But there is some case law out there from the Supreme Court that that interest alone will not suffice to provide Article III standing. But it is an interesting question whether under some other statutes it might be different. Are you aware of any? Yes, the Campbell eWallet itself was a Fair Labor Standards Act case. I didn't look at the fee-shifting portion of it, but, again, the AFL-CIO indicated that attorney's fees had to be part of a tender and a judgment. Now, again, they have the right to change their mind in six years and when they're a direct party, but it is a parent union. All right. We thank both counsel for excellent argument today and your stamina in making a long argument too, but very helpful to the court. Thank you, Your Honor. We'll take the case now.